IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:23-CV-1062-FL

| | |
|---|---|
| WRIGHTSVILLE BEACH PROPERTY, LLC, ) ) ) Plaintiff, ) ) v. ) ) MONER ATTWA, ) ) Defendant. ) | ORDER |

This matter is before the court upon defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 6). The issues raised have been briefed fully. For the following reasons, the motion is granted in part and denied in part.

### STATEMENT OF THE CASE

Plaintiff, a North Carolina limited liability company in which defendant originally had an interest that defendant allegedly transferred to member Mark Gross ("Gross") around March 27, 2023, commenced this action against its former member June 2, 2023, in Superior Court of New Hanover County, North Carolina. Plaintiff asserts four claims under North Carolina law arising out of defendant's allegedly improper use of plaintiff's funds to take a property on Raleigh Street in Wrightsville Beach (the "Raleigh Street property") purchased by plaintiff into his own name, and to construct and furnish a house on the Raleigh Street property for his own benefit. Claims include: 1) conversion/constructive trust; 2) fraud/constructive trust; 3) breach of contract; and 4) unjust enrichment/constructive trust. Plaintiff seeks an order entering a constructive trust in its

favor and directing defendant to transfer to it title of the Raleigh Street property, compensatory damages, punitive damages, and fees and costs.

Defendant, a resident of Virginia and former chief financial officer of a company owned by Gross, Oak Grove Technologies, LLC ("Oak Grove"), removed the action to this court June 7, 2023, on the basis of diversity jurisdiction. Defendant then filed the instant motion to dismiss for failure to state a claim, relying upon 1) an assignment executed March 27, 2023, by defendant and Gross, and 2) the operating agreement for plaintiff. Plaintiff responded in opposition and defendant replied. Thereafter, defendant filed a notice of suggestion of subsequently controlling authority.

## STATEMENT OF THE FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff was formed May 23, 2018, for the purpose of allowing Gross to purchase a beach house at 7 East Asheville Street, Wrightsville Beach (the "Asheville Street property"). Its original members were Gross and defendant, a licensed certified public accountant.

Defendant, in his capacity as the chief financial officer of Oak Grove, and having the experience of being an accountant, allegedly advised Gross that in order to obtain certain desired tax benefits, he could not be the sole owner of plaintiff, and that plaintiff should have at least two member owners. "For that reason," according to the complaint, plaintiff "was formed with both [Gross] and [d]efendant as member owners." (Compl. ¶ 6).

Defendant drew up the papers, including the company's operating agreement (the "operating agreement"), which contemplated 50/50 ownership with equal capital contributions and equal distributions. Gross later learned there was no tax advantage to having more than one owner

2

of plaintiff. If Gross had known that, defendant would not have been made a member of plaintiff. After plaintiff was formed, it purchased the Asheville Street property.

Though each member of plaintiff was required to make equal contributions to plaintiff, defendant did not make contributions to plaintiff equal to those made by Gross. In 2020, plaintiff "acted to buy a second home in Wrightsville Beach," by buying the Raleigh Street property, which was "a lot located at 12 E. Raleigh St. on which to build a house." (Compl. ¶ 11).

On June 5, 2020, defendant executed three documents on behalf of plaintiff for the purchase of the Raleigh Street property: 1) an "exclusive buyer agency agreement," 2) a "professional services disclosure and election," and 3) an "offer to purchase and contract – vacant lot/land." (Compl. Exs. A-C). On June 6, 2020, the offer to purchase and contract was accepted by the seller, for a "purchase price" of $980,000.00. (Id. Ex. D).

On June 8, 2020, defendant directed $300,000.00 of funds from Oak Grove to be transferred to plaintiff. "He instructed the Oak Grove accounting department to account for such transfer as a distribution from Oak Grove to [Gross], but told [plaintiff's] outside accountants to book those funds as a contribution to [plaintiff] from [d]efendant, thereby converting $300,000 belonging to [Gross] to [d]efendant's personal benefit." (Compl. ¶ 16). "Defendant's actual money contributions to [plaintiff] were far smaller than he had the books represent, and far less than the contributions of Gross." (Id.).

Plaintiff held its banking accounts at First Citizens Bank. On June 8, 2020, First Citizens Bank provided a letter to defendant showing that plaintiff had sufficient assets to buy the Raleigh Street property – "not [d]efendant personally." (Id. ¶ 17). On June 11, 2020, plaintiff paid $50,000.00 and $2,000.00 for purposes of making the earnest payment and paying the diligence fee for the Raleigh Street property. By an engagement letter dated June 23, 2020, plaintiff

3

"engaged the law firm of Murchison, Taylor & Gibson, PLLC, in Wilmington to assist in [plaintiff's] purchase of the Raleigh Street [p]roperty." (Id. ¶ 19) "This law firm represented [plaintiff], not [d]efendant," and "[d]efendant signed the engagement letter on behalf of [plaintiff]." (Id.).

"Defendant represented to the seller of the property and to the closing attorney that the buyer of the property was Wrightsville Beach Property, LLC, 'Buyer: Wrightsville Beach Propert [sic], LLC' 'Buyer Name: Property in LLC Listed Above'" in a closing information sheet for the closing attorney. (Compl. Ex. H). On July 18, 2020, plaintiff paid the expenses of a credit report and appraisal for purchase of the Raleigh Street property, at defendant's direction.

August 25, 2020, three days prior to closing, plaintiff's law firm asked defendant to "confirm that you would like the title to the property to vested in 'Moner Attwa' [defendant] and not Wrightsville Beach Property, LLC [plaintiff]." (Compl. ¶ 24). "Defendant confirmed he wanted it in his name, but stated 'It can be in my name only since we are switching it to the company after it's built along with the loan.'" (Id. ¶ 25).

At closing, August 28, 2020, plaintiff paid more than $475,000.00 to purchase the Raleigh Street property, and funds used for the purchase were taken from plaintiff. "Without [Gross's] knowledge, [d]efendant instructed the closing attorney to title the Raleigh Street [p]roperty in his personal name." (Id. ¶ 23). "A construction loan was taken in [d]efendant's name, but [d]efendant directed that the loan payments be drafted directly from plaintiff's account." (Compl. ¶ 26). "Construction loan payments were made regularly by [plaintiff] for the Raleigh Street [p]roperty." (Id.). Additional funds of plaintiff "were withdrawn for the building of the house on the Raleigh Street [p]roperty on multiple occasions." (Id. ¶ 27).

4

Defendant allegedly "concealed from [plaintiff's] outside accountants that a second beach house had even been purchased, and that substantial funds accounted for as renovation expenses were going towards the Raleigh Street [p]roperty instead of the Asheville Street [p]roperty." (Id. ¶ 28). "The total amount of funds that [plaintiff] paid for the purchase of the Raleigh Street [p]roperty and construction and furnishing of the house there is in excess of $1,000,000." (Id. ¶ 30).

Defendant assigned his interest in plaintiff to Gross effective March 27, 2023. In that assignment, he transferred all his rights and membership interest, if any, in plaintiff. Defendant represented in the assignment that "he acted in accord with the terms of the Operating Agreement" of plaintiff during the period of his ownership. (Id. ¶ 32). "However, the [o]perating [a]greement of [plaintiff] required all transactions of the [plaintiff] to be approved by both members." (Id.).

"The total amount of contributions and distributions between [d]efendant and [Gross] have been disproportionate." (Id. ¶ 33). "Defendant contributed no more than approximately $300,500." (Id.). "Gross contributed a total of at least $1,448,562." (Id.). "Gross has received no distributions, while [d]efendant appears to have received distributions in excess of his total contributions." (Id.). "Defendant has refused to transfer the Raleigh Street [p]roperty to [plaintiff]." (Id.) Plaintiff "has filed a Lis Pendens on the [Raleigh Street] property." (Id. ¶ 35).

**COURT'S DISCUSSION**

A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level[.]"

Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[1]

B. Analysis

    1. Conversion/Constructive Trust

Defendant argues that plaintiff's first claim (along with plaintiff's other claims)[2] must be dismissed because the "assignment bars" it. (Def's Mem. (DE 7) at 10).[3] In addition, defendant argues the claim fails because conversion of real property is not a tort in North Carolina. The court turns first to the latter argument, in order to define the proper scope of plaintiff's claim, and then turns to defendant's argument based upon the assignment.

"The tort of conversion is well defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523 (2012) (emphasis added). As such, by definition, conversion only applies to goods or personal chattels, and not to real property. See Id.; see, e.g., Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 414 (2000) ("A claim for conversion does not apply to real property.").

---

[1] Throughout this order, internal quotation marks and citations are omitted from case citations unless otherwise specified.

[2] The court addresses the viability of plaintiff's other claims, separately, below.

[3] Page numbers in citations to the record are to the page number specified by the court's case management / electronic case filing system, rather than the page number, if any, showing on the face of the underlying document.

6

Here, plaintiff asserts in its first claim, in part, that "[d]efendant has attempted to convert [the Raleigh Street] property to his own," and it labels its first claim, in part, as one for "[c]onversion." (Compl. p. 9, ¶ 39). In this part, plaintiff's claim is lacking a basis in North Carolina law. Indeed, in opposition to the instant motion, plaintiff does not seek to advance a claim of conversion and the claim in this part accordingly is deemed abandoned. Therefore, in accordance with the common law definition of conversion, defendant's motion must be granted and plaintiff's claim in that part must be dismissed.

With respect to that part of plaintiff's claim based upon a constructive trust, "[i]t is firmly established in [North Carolina] that a person occupying a place of trust, or a fiduciary relation, should not put himself in a position in which self interest conflicts with any duty he owes to those for whom he acts, and upon purchasing the property of those to whom he owes a fiduciary duty he must affirmatively show full disclosure and fair dealing." Underwood v. Stafford, 270 N.C. 700, 702 (1967). "A constructive trust is a duty, or relationship, imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." Roper v. Edwards, 323 N.C. 461, 464 (1988). "There is a common, indispensable element in the many types of situations out of which a constructive trust is deemed to arise[,] [comprising] some fraud, breach of duty or other wrongdoing by the holder of the property." Id. "Fraud need not be shown if legal title has been obtained in violation of some duty owed to the one equitably entitled." Id. at 465.

In this case, plaintiff has alleged sufficient facts to state a claim for a constructive trust based upon "breach of fiduciary duty [and] other wrongdoing." Id. at 464.[4] In particular, plaintiff

---

[4] The court addresses separately further below plaintiff's claim for constructive trust based upon fraud.

7

Case 7:23-cv-01062-FL   Document 18   Filed 11/21/23   Page 7 of 20

claims that defendant "misappropriated the Raleigh Street [p]roperty by titling it in his own name and refusing to transfer the title" to plaintiff. (Compl. ¶ 38). Plaintiff also asserts that defendant came into possession of the Raleigh Street property "only on behalf of [plaintiff], acting as an agent and member of [plaintiff], and thus under circumstances where in good conscience he should not retain that property." (Id. ¶ 40). Plaintiff contends that Gross, as a 50% member of plaintiff, did not approve defendant's titling of the Raleigh Street property in his own name, after having used plaintiff's and Gross's funds to carry out the purchase. (Id. ¶¶ 23, 32). Plaintiff further details defendant's role as a managing member of plaintiff, and the corresponding duties that flow from that position, both by operation of statute and the operating agreement, which is incorporated by reference into the complaint. (Id. ¶¶ 7, 32).

Under the operating agreement, "the business and affairs of [plaintiff] will be managed by the Members," defined to include defendant and Gross. (Operating Agreement (DE 6-2) at 4). In turn, "all activities or transactions must be approved by the Members." (Id. at 5). Further, by statute, incorporated in to the operating agreement, "[e]ach manager shall discharge that person's duties (i) in good faith, (ii) with the care an ordinary prudent person in a like position would exercise under similar circumstances, and (iii) subject to the operating agreement, in a manner the manager believes to be in the best interests of the LLC." N.C. Gen. Stat. § 57D-3-21(b). In sum, in this respect, the complaint states a claim for a constructive trust resulting from defendant's alleged breach of fiduciary duty, through misappropriation, while acting as plaintiff's agent and member.

Defendant suggests that "constructive trust" is not a stand-alone claim under North Carolina law, but rather a potential remedy only. Defendant asserts, for example, "[c]onversion is a cause of action, whereas constructive trust is a potential remedy for the same." (Def's Reply

(DE 15) at 1). A constructive trust, however, is not only a remedy for conversion, but rather "a fiction of equity, brought into operation to prevent unjust enrichment through the breach of some duty or other wrongdoing . . . . by the holder of [a] property." Roper, 323 N.C. at 464; see, e.g., Norman, 140 N.C. App. at 416 (allowing "a claim for imposition of a constructive trust" to proceed "as a separate cause of action," where based upon "allegations that the defendants profited by the breaches of the fiduciary duty they owed plaintiffs").[5] Where plaintiff has alleged facts giving rise to a breach of fiduciary duty (in addition to fraud, addressed further below with respect to plaintiff's second claim), plaintiff's first claim seeking a constructive trust is in this part a viable claim under North Carolina law.

The court turns next to defendant's argument that the assignment bars plaintiff's claim. Defendant points specifically to language of the assignment that provides that, as "[c]onsideration" for giving up his 50% interest in plaintiff, defendant "accept[ed] as payment value previously received from the Assignee," in this case Gross. (Assignment (DE 6-1) at 1). Defendant contends the "value previously received from the Assignee" is "precisely what [plaintiff] is suing to recover, to wit Raleigh Street [property] and [plaintiff's] / Gross's contributions toward Raleigh Street [property]." (Def's Mem. (DE 7) at 11). Defendant argues "there is no other permissible inference but that the parties intended [defendant] to keep Raleigh Street [property]." (Id.).

Defendant's argument is unavailing for multiple reasons. First, nothing in the assignment states anything about barring claims or releasing defendant from claims brought by plaintiff against

---

[5] In his suggestion of subsequent decided authority, defendant cites to Weaver, Bennett & Bland, P.A. v. Villmer, No. 22 CVS 20789, 2023 WL 4873501, at *9 (N.C. Super. July 31, 2023), in which the court opined that a complaint "mischaracterized" remedies, including "constructive trust . . . as causes of action." Id. *9. As an initial matter, Weaver does not cite any authority for this proposition as applied to a constructive trust, and it is in tension with Roper and Norman cited in the text above. In any event, Weaver is inapposite, because the court noted, there, that each remedy was "attached to a validly pleaded cause of action," Id., which is also true for the instant case, where plaintiff attaches its constructive trust remedy to a validly pleaded cause of action for "breach of fiduciary duty or other wrongdoing." Roper, 323 N.C. at 464.

9

defendant.  While a valid release or settlement agreement may, in some cases, provide a defense to a claim that can be considered upon a motion to dismiss, the assignment does not provide for a release of all claims by plaintiff against defendant.  See, e.g., Adder v. Holman & Moody, Inc., 288 N.C. 484, 492 (1975) ("A release is the giving up or abandoning of a claim or right to the person against whom the claim exists or the right is to be exercised."); McGuire v. LORD Corp., 456 F. Supp. 3d 729, 740 (E.D.N.C. 2020)  (dismissing all claims under Rule 12(b)(6) based upon "a plain and unambiguous release of 'any and all claims in full and final settlement of any rights or obligations that may exist on the date hereof'").  Absent such a broad release, defendant's argument that the assignment bars all claims asserted by plaintiff is without merit.

Second, according to the complaint, defendant represented falsely in the assignment that "during such time as his beneficial ownership of the [50% interest in plaintiff] he acted in accordance with the terms of the Operating Agreement."  (Assignment (DE 6-1) at 1; see Compl. ¶ 32).  Defendant allegedly breached the operating agreement "on multiple occasions."  (Compl. ¶ 32).  That, in turn, calls into question defendant's ability to seek recourse in his favor based upon the assignment at this juncture.  See, e.g., Troitino v. Goodman, 225 N.C. 406, 416 (1945) ("[W]here a party breaches his contract without any valid excuse, the courts are not disposed to permit him to prescribe the rights of the innocent party."); Edgerton v. Taylor, 184 N.C. 571, 115 S.E. 156, 159 (1922) (recognizing a party cannot enforce a contract "without averring and proving a performance of his own antecedent obligations arising on the contract").

Third, the language of the assignment upon which defendant relies is ambiguous.  Contrary to defendant's argument, when construed in the light most favorable to plaintiff, it does not suggest "no other permissible inference but that the parties intended [defendant] to keep Raleigh Street." (Def's Mem. (DE 7) at 11).  Instead, based upon the facts and circumstances alleged in the

10

complaint, it is reasonable to infer that Gross intended for defendant to keep value received from Gross, excluding any unauthorized transfers and excluding transfers received from plaintiff. (E.g., Compl. ¶ 16 (alleging that defendant converted "$300,000 belonging to [Gross] to Defendant's personal benefit"); ¶ 22 (alleging that "[a]ll the money for [the Raleigh Street] purchase was taken from [plaintiff]").

Defendant argues that the complaint "reveals that [plaintiff] and Gross knew about the Raleigh Street house at the time of the [a]ssignment." (Def's Mem. (DE 7) at 11). As such, defendant contends, "it would be inherently incredibl[e] to assume that if Gross and [plaintiff] expected Raleigh Street to be conveyed to them (instead of retained by [defendant] as consideration), the [a]ssignment would not so state." (Id.). The premise of defendant's argument, however, is flawed. According to the complaint, "[w]ithout [Gross's] knowledge, [d]efendant instructed the closing attorney to title the Raleigh Street [p]roperty in his personal name." (Compl. ¶ 23). In addition, defendant "concealed from [plaintiff's] outside accountants that a second beach house had even been purchased." (Id. ¶ 28). Accordingly, defendant's assertions about what plaintiff and Gross knew and when they knew it need not be credited in adjudicating the instant motion.

In sum, plaintiff has stated a claim for constructive trust based upon defendant's alleged breach of fiduciary duty, through misappropriation, while acting as plaintiff's agent and member. In that part, plaintiff's first claim therefore may proceed. In remaining part, where based upon conversion, plaintiff's first claim is dismissed.

2. Fraud/Constructive Trust

Defendant argues that either plaintiff's fraud claim or breach of contract claim, or both, must be dismissed because plaintiff "pleads contradictory factual allegations about facts wholly

11

known by plaintiff." (Def's Mem. (DE 7) at 13).[6] Considering first plaintiff's claim for fraud/constructive trust, the court disagrees the claim must be dismissed, and the court allows the claim to proceed subject to the limitations set forth herein.

As noted previously, a constructive trust is "imposed by courts of equity to prevent the unjust enrichment of the holder of title to, or of an interest in, property which such holder acquired <u>through fraud</u>, breach of duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." Roper, 323 N.C. at 464 (emphasis added). Such a claim requires "some fraud, breach of duty or other wrongdoing by the holder of the property." Id. "The elements of fraud are: (1) the defendant's false representation of a past or existing fact, (2) defendant's knowledge that the representation was false when made or it was made recklessly without any knowledge of its truth and as a positive assertion, (3) defendant made the false representation with the intent it be relied on by the plaintiff, and (4) the plaintiff was injured by reasonably relying on the false representation." Britt v. Britt, 320 N.C. 573, 579 (1987).

Here, plaintiff has stated a claim for constructive trust resulting from defendant's claimed fraud, where plaintiff asserts defendant "made intentional and material misrepresentations" upon which plaintiff relied to its detriment. (Compl. ¶ 45). In particular, plaintiff alleges that defendant "instructed the Oak Grove accounting department to account for [a $300,000] transfer as a distribution from Oak Grove to [Gross], but <u>told [plaintiff's] outside accountants to book those funds as a contribution to [plaintiff] from [d]efendant</u>, thereby converting $300,000 belonging to [Gross] to [d]efendant's personal benefit." (Id. ¶ 16) (emphasis added). According to the complaint, defendant's "actual money contributions to [plaintiff] <u>were far smaller than he had the books represent</u>, and far less than the contributions of Gross." (Id.) (emphasis added).

---

[6] Defendant also argues that this claim is "barred by the assignment." (Def's Mem. (DE 7) at 13). For the reasons stated above with respect to plaintiff's first claim, this basis for dismissal is without merit.

Plaintiff also alleges that defendant "deliberately concealed from [plaintiff's] outside accountants that a second beach house had even been purchased, and that substantial funds accounted for as renovation expenses were going to the Raleigh Street [p]roperty instead of the Asheville Street [p]roperty." (Id. ¶ 28). Further, plaintiff alleges that defendant "represented to the seller of the property and to the closing attorney that the buyer of the property was [plaintiff]." (Id. ¶ 20). Plaintiff then "fraudulently titled the Raleigh Street [p]roperty in his own name," by "using [plaintiff's] funds for the purchase and construction on that property and promising to transfer the property to [plaintiff] after construction was complete, and then refusing to transfer title of that property to [plaintiff]." (Id. ¶ 46; see id. ¶ 23 ("Without [Gross's] knowledge, [d]efendant instructed the closing attorney to title the Raleigh Street [p]roperty in his personal name.").

These allegations concerning misrepresentations and concealments by defendant are sufficient to state a constructive trust claim based upon fraud. See Roper, 323 N.C. at 464. In one respect, however, plaintiff's claim based upon fraud must be carefully delineated. In particular, plaintiff asserts, in part, that defendant "promised to transfer the property to [plaintiff] after construction was complete," but then did not fulfil this promise. (Compl. ¶ 46). "Evidence of a promise which is not fulfilled is not sufficient to support a finding of a false representation unless the evidence shows the promisor made the promise with no intention of fulfilling it." Britt, 320 N.C. at 579. "Mere proof of nonperformance is not sufficient to establish the necessary fraudulent intent." Id. at 580. Accordingly, the recourse for a failure to perform as promised ordinarily is through a claim of breach of contract, not fraud. See, e.g., Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 166 (4th Cir. 2018) ("[A] plaintiff may not circumvent the economic loss rule simply by claiming that a breach of contract claim also sounds in fraud.").

13

In this case, the alleged facts permit a plausible inference that defendant had no intention to fulfil his alleged promise to transfer title to plaintiff, at the time he made the promise. This inference arises from the alleged facts that defendant already made misrepresentations and concealments both prior to and after the time the alleged promise was made. Prior to the promise, defendant allegedly misrepresented the nature and amount of his contributions, and he misrepresented the buyer of the Raleigh Street property. (Compl. ¶¶ 16, 20). After the promise, he allegedly concealed the purchase and the nature of funds transfers from plaintiff's accountants, and he allegedly concealed his violations of the operating agreement through the date of the assignment. (Id. ¶¶ 28, 30, 32). Taken together, these allegations support an inference of fraud on the basis of failure to fulfil a promise made. The court leaves for a later juncture consideration of this part of plaintiff's fraud claim upon a more complete record.

The court turns next to defendant's argument that the instant claim must be dismissed because it is based upon contradictory allegations. According to defendant:

> [Plaintiff] has pled facts in each claim that defeats the other. If Gross relied on a promise that [defendant] would buy Raleigh Street in [defendant's] name and later convey it to [plaintiff], he consented to the purchase, defeating Claim #2. And, if he did not consent to [defendant] buying Raleigh Street in his name as Claim #2 alleges, he did not rely on a promise that [defendant] would buy Raleigh Street in [defendant's] name and later convey it to [plaintiff] as Claim #3 alleges. In that scenario, there would necessarily be no reliance on any promise that, if Claim 2 is correct, Gross did not even know about.

(Def's Mem. (DE 7) at 14-15). This argument fails because the premises upon which it is based are incorrect. As an initial matter, the argument does not accurately represent the basis for plaintiff's second and third claims. In plaintiff's second claim, plaintiff asserts, in part, that defendant promised to transfer title of the Raleigh Street property to plaintiff, in addition to other misrepresentations upon which plaintiff allegedly relied. (Compl. ¶ 46). In plaintiff's third claim, plaintiff asserts that defendant breached the operating agreement by taking acts without approval

14

of Gross, including titling the Raleigh Street property in his own name. (Id. ¶ 52). Accordingly, defendant's references to "Claim #2" and "Claim #3" in the above-quoted argument are backwards.

In addition, and in any event, defendant does not accurately represent the factual premises upon which each claim is based. Defendant asserts, for example, that "[i]f Gross relied on a promise that [defendant] would buy Raleigh Street in [defendant's] name and later convey it to [plaintiff], he consented to the purchase, defeating Claim #[3]."[7] (Def's Mem. (DE 7) at 14) (emphasis added). Plaintiff, however, does not allege that Gross relied upon such a promise by defendant. Rather, the complaint alleges that defendant's instructions about title were made "[w]ithout [Gross's] knowledge," thus permitting an inference that defendant's promise to convey title also was without Gross's knowledge. (Compl. ¶ 23). Instead, the complaint suggests that plaintiff, through agents such as its "outside accountants and tax preparers," relied upon fraudulent representations and concealments by defendant. (Id. ¶ 30).

Similarly, defendant asserts that "if [Gross] did not consent to [defendant] buying Raleigh Street in his name as Claim #[3] alleges, he did not rely on a promise that [defendant] would buy Raleigh Street in [defendant's] name and later convey it to [plaintiff] as Claim #[2] alleges."[8] (Def's Mem. (DE 7) at 14-15). Again, defendant conflates Gross with plaintiff. While plaintiff's breach of contract claim is premised upon lack of consent by Gross, plaintiff's fraud claim does not depend upon Gross's reliance on promises made by defendant. Therefore, plaintiff's assertion

---

[7] For ease of reference, the court has inserted in brackets here the correct claim number that corresponds to the quoted statement in defendant's argument. Specifically, plaintiff's third claim would be defeated by consent of Gross, since the third claim is based on a breach of the operating agreement, which requires consent of both members for transactions on behalf of plaintiff. (See Compl. ¶¶ 23, 32, 52; Operating Agreement (DE 6-2) at 5).

[8] In the text quoted above, the court again has inserted in brackets the correct claim number that corresponds to the statement in defendant's argument.

15

that defendant took actions "without approval of both LLC members," (compl. ¶ 46), does not contradict plaintiff's fraud claim.

In sum, where plaintiff's second claim is not based upon allegations contradicting those supporting plaintiff's third claim, dismissal on this basis is not warranted.[9] Defendant's motion in this part accordingly is denied, and plaintiff's fraud/constructive trust claim is allowed to proceed subject to the limitations set forth herein.

3. Breach of Contract

Apart from arguments already addressed herein above, defendant does not provide in his motion a separate basis for dismissal of plaintiff's breach of contract claim. Defendant suggests in his reply brief that plaintiff does not have standing to assert a breach of contract claim based on the operating agreement, and that only Gross is "the proper party" for such a claim. (Def's Reply (DE 15 at 4). This is incorrect. The North Carolina Limited Liability Company Act, which is incorporated by reference into the operating agreement (see DE 6-2 at 1), expressly provides that "[t]he LLC is deemed to be a party to the operating agreement and . . . may enforce the provisions thereunder applicable to the LLC." N.C. Gen. Stat. § 57D-2-31(a).

Therefore defendant's motion in this part is denied and the court allows plaintiff's breach of contract claim to proceed.

---

[9] Cases cited by defendant for the proposition that a "plaintiff cannot plead alternatively contradictory allegations about facts within his knowledge," (Def's Mem. (DE 7) at 13), accordingly also are inapposite. E.g., Tamayo v. Blagojevich, 526 F.3d 1074, 1086 (7th Cir. 2008) (stating "pleading rules do not tolerate factual inconsistencies in a complaint"); AmeriPOD, LLC v. DavisREED Constr. Inc., No. 3:17-CV-00747-H-WVG, 2017 WL 2959351, at *2 (S.D. Cal. July 11, 2017) (stating a complaint may plead "contradictory statements of fact so long as the pleader has a legitimate doubt about the underlying facts").

4.      Unjust Enrichment/Constructive Trust

Defendant argues that plaintiff's unjust enrichment claim must be dismissed because there is alleged to be an express contract governing the relationship between the parties. The court agrees.

"The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." Krawiec v. Manly, 370 N.C. 602, 615 (2018). "In order to establish a claim for unjust enrichment, a party must have conferred a benefit on the other party, and the benefit must not be gratuitous and it must be measurable." Id.

"A claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." Booe v. Shadrick, 322 N.C. 567, 570 (1988). Accordingly, "[i]f there is a contract between the parties the contract governs the claim and the law will not imply a contract." Id. "[A]n express contract precludes an implied contract with reference to the same matter." Vetco Concrete Co. v. Troy Lumber Co., 256 N.C. 709, 713 (1962). "There cannot be an express and an implied contract for the same thing existing at the same time." Id. "[A]n action for unjust enrichment . . . may not be brought in the face of an express contract." SciGrip, Inc. v. Osae, 373 N.C. 409, 432 (2020).

Here, plaintiff alleges an express contract governing the relationship between the parties, and plaintiff references the same conduct in both the breach of contract and unjust enrichment claims. In particular, plaintiff asserts defendant breached the operating agreement "by taking acts without approval of both LLC members including but not limited to titling the Raleigh Street Property in his own name." (Compl. ¶ 52). Plaintiff requests "a resulting trust and/or a constructive trust should be found in favor of plaintiff," and "[d]efendant should be permanently

17

enjoined and directed to transfer title of the Raleigh Street [p]roperty and mortgage for the property to [plaintiff]." (Id. ¶ 53). For its unjust enrichment claim, plaintiff asserts "[d]efendant would be unjustly enriched if permitted to retain title to the Raleigh Street [p]roperty, [through] his misuse of his powers as a real or apparent agent and as a member of [plaintiff]." (Id. ¶ 57). Plaintiff seeks the same relief in the form of a constructive trust. (Id. ¶ 58).

Because plaintiff asserts the existence of an express contract governing the same parties and the same course of conduct, the law will not imply a contract through a theory of unjust enrichment. Plaintiff nonetheless argues that an unjust enrichment claim is barred only if it is "dependent upon the existence of a contract between the parties," citing Mountain Land Properties, Inc. v. Lovell, 46 F. Supp. 3d 609, 623 (W.D.N.C. 2014). (Pl's Mem. (DE 14) at 13) (emphasis added by plaintiff). That is not, however, the standard articulated by the North Carolina Supreme Court. See SciGrip, Inc., 373 N.C. at 432; Booe, 322 N.C. at 570; Vetco Concrete Co., 256 N.C. at 713; see also Ron Medlin Const. v. Harris, 364 N.C. 577, 588 (2010) ("[A]s a matter of law, plaintiff Medlin Construction had a contractual relationship with defendants and thus, cannot recover in quantum meruit.") (emphasis added).

Moreover, the cited case is instructively distinguishable because, there, one of two plaintiffs sought to "assert an unjust enrichment claim in her individual capacity," despite "the fact that she signed the loan agreements at issue in her capacity as President of [the other plaintiff in that case] Plaintiff Mountain Land Properties [Inc.]." Mountain Land Properties, Inc., 46 F.Supp.3d at 623. The court thus allowed the unjust enrichment claim to proceed. See Id. By contrast, in the instant case, there is only one plaintiff seeking to assert both a breach of contract claim and an unjust enrichment claim. To be analogous to Mountain Land Properties, Inc., plaintiff

18

would need to assert one claim and Gross another in his individual capacity, but Gross has not done so.

Plaintiff argues that it should be allowed to plead unjust enrichment "in the alternative" based upon North Carolina's "liberal pleading rules," and that dismissal upon a 12(b)(6) motion is premature. (Pl's Mem. (DE 14) at 13 nn. 4-5). Applying federal pleading rules as it must, however, this court previously has dismissed unjust enrichment claims upon a 12(b)(6) motion. See, e.g., Great Am. Emu Co., LLC v. E.J. McKernan Co., 509 F. Supp. 3d 528, 538 (E.D.N.C. 2020); Dillon v. Leazer Grp., Inc., 374 F. Supp. 3d 547, 561–62 (E.D.N.C. 2019); Augustson v. Bank of Am., N.A., 864 F. Supp. 2d 422, 438 (E.D.N.C. 2012). In one case, this court allowed an unjust enrichment claim to be pleaded in the alternative "when the validity of the contract [was] in question." Indep. Warehouse v. Kim, No. 4:17-CV-49-BO, 2017 WL 4322399, at *2 (E.D.N.C. Sept. 28, 2017). But there is no such question of contract validity arising from the facts alleged in the instant complaint.

Plaintiff also suggests that there is no contract in the instant case specifically addressing the titling of the Raleigh Street property, and that the unjust enrichment claim should fill this contractual gap. Plaintiff asserts, for example, "[o]f course Gross did not contract, on behalf of himself or [plaintiff], to solve a problem based on [d]efendant's fraud that he did not know about." (Pl's Mem. (DE 14) at 14) (emphasis added). These assertions, however, do not salvage plaintiff's unjust enrichment claim. Both it and plaintiff's breach of contract claim are based upon defendant's titling of the Raleigh Street property in his own name. (Compl. ¶¶ 52, 57). Further, plaintiff's unjust enrichment claim as alleged is based upon defendant's "misuse of his powers as a real or apparent agent and as a member of [plaintiff]." (Id. ¶ 57). Where that agency and membership is based upon the operating agreement, the operating agreement governs the

19

relationship between the parties, not an implied contract. Booe, 322 N.C. at 570. Insofar as plaintiff now seeks to rely in its brief upon injury to Gross or an implied contract with Gross about the titling of the Raleigh Street property, such a claim is not pleaded in the instant complaint.

In sum, plaintiff's unjust enrichment claim fails as a matter of law because of the existence of an express contract governing the relationship between the parties. Therefore, defendant's motion in this part is granted and plaintiff's unjust enrichment claim is dismissed.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 6) is GRANTED IN PART and DENIED IN PART as set forth herein. Part of plaintiff's first claim for conversion and plaintiff's fourth claim for unjust enrichment are DISMISSED pursuant to Rule 12(b)(6). Plaintiff's remaining claims, subject to the limitations set forth herein, are allowed to proceed. In accordance with Rule 12(a)(4), defendant shall file a responsive pleading within 14 days of the date of this order.

SO ORDERED, this the 20th day of November, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge